### MORRIN v. LAWLOR.

MORRIN et al. v. EDISON ELECTRIC ILLUMINATING CO. OF BROOKLYN (two cases).

(Circuit Court of Appeals, Second Circuit. January 24, 1900.)

Nos. 8, 9, and 10.

1. PATENTS—ANTICIPATIONS—IMPROVEMENT IN STEAM GENERATORS.

The Morrin and Scott patent, No. 309,727, for certain improvements in steam generators, *held* valid, not anticipated, and infringed as to claim 2.

2. SAME.

The Morrin patent, No. 463,307, for improvements in steam generators, as to claim 1 was anticipated by claim 2 of the Morrin and Scott patent, No. 309,727; claim 2 *held* valid and infringed.

3. SAME—SECTIONAL CASINGS FOR STEAM GENERATORS.

The Morrin patent, No. 463,308, for improvements in sectional casings for steam generators, *held* valid, not anticipated, and infringed.

Wallace, Circuit Judge, dissenting.

Appeals from the Circuit Court of the United States for the Eastern District of New York.

These three bills in equity were brought before the United States circuit court for the Eastern district of New York, the respective suits being based upon the infringement of different letters patent, which are, respectively, No. 309,727, dated December 23, 1884, and issued to Thomas F. Morrin and Walter W. Scott, No. 463,307, dated November 17, 1891, issued to Thomas F. Morrin, each of said patents being for improvements in steam generators, and No. 463,308, dated November 17, 1891, issued to said Morrin for an improved sectional casing for steam generators. The respective suits upon these patents are known as Nos. 9, 10, and 8. The circuit court issued decrees in the usual form to restrain the infringement of claim 2 of the first patent, claims 1 and 2 of the second patent, and all the claims of the third patent. 90 Fed. 285. Appeals have been taken by the respective defendants in each case, and the questions arising thereon will be considered in one opinion.

Edwin H. Brown, for appellants.

Arthur v. Briesen, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge (after stating the facts). The invention of the first two patents related to the "class of steam generators wherein a vertical generator shell, provided with lateral tubular branches, is arranged within a furnace shell, provided with an annular grate." The boilers which have been constructed under the various patents in suit, and known as the "Climax Boilers," have obtained a deservedly high reputation, which has been mainly owing to the fact that they furnished to manufacturers a steam boiler to be used upon a small ground area, with an amount of heating surface above that which existed in pre-existing boilers. This result was due to the improvement described in claim 2 of the patent to Morrin and Scott, and which consisted, in general terms, in attaching to a central vertical cylinder, having an annular grate, tiers or substantially horizontal series of radial double-branched tubes, or a network of tubes, both branches of which enter the cylinder, one above the other, whereby a large increase of heating surface is obtained, because each of these tubes occupies or spans a small portion of the height of the boiler, and, as the heat of the fire is not confined to the bottom of the central cylinder, the water in the branch tubes has a temperature above that of the central cylinder, and a constant circulation is maintained between tubes and boiler. The tubes overlap; "that is, the upper branches of one tier of tubes overlap and enter the cylinder above the lower branches of the next tier above; and the two ends of the tubes are arranged in different vertical planes. * * * By overlapping the tiers of tubes as shown, we are enabled to fit within a practicable compass an unusually large amount of heating surface, and to fill up the gas passage of the furnace with a network of tubes."

Claims 1 and 2 are as follows:

"(1) A steam generator provided with one or more tiers or horizontal series of double-branched radial obliquely arranged tubes, H, both ends of which tubes enter the generator cylinder, and the lower ends of which are constructed to extend further into the interior of the said cylinder than the upper ends, substantially as and for the purposes set forth.

"(2) A steam generator provided with tiers or horizontal series of radial double-branched tubes, H, both branches of which enter the generator cylinder, one above the other, and the upper branches of one series constructed to enter said generator cylinder above the point or line where the lower branches of the next tier above enter it, substantially as set forth."

The specification describes also another cylinder, called "G," open at both ends, set in the generator cylinder called "B," and extending upwards to the water level, so as to leave an annular space between the two. Circulation in the tubes was thought to be promoted by extending the lower end of the tubes across the annular space and into the inner cylinder, the upper series of tubes being above it. The supposed benefit to the circulation was upon the theory that an upward movement would be established in the annular space, and a downward current in G. This cylinder is not an element of the combination described in claims 1 and 2, which contain the gist of the

invention, but is an element of the combination described in seven of the ten claims of the patent.

Upon the question of the patentable novelty of the invention described in the Morrin and Scott patent, the defendant chiefly relies upon the series of patents to Robert E. Rogers and James E. Black,— No. 41,323, and its reissue, No. 2,130; No. 55,539, dated June 12, 1866; No. 65,281, and its reissue, No. 4,535; and No. 65,280. All these boilers had circular grates and tubes, always extending from their lower towards their upper portions, sometimes in double sets in which one set is shorter than the other, and sometimes in double sets the two ends of a tube being in different vertical planes. No one of these boilers has an annular grate, which is indispensable to a Climax boiler, and no one has the system of Morrin and Scott. The system of Rogers and Black was that of long and substantially vertical lateral tubes, whereas the system of claim 2 of the first patent in suit was that of a network of tubes in substantially horizontal series, interlapping with each other, and thus exposing a large extent of tube surface to a strong heat.

The well known and successful Hazleton or "Porcupine" boiler, for which letters patent No. 247,910, dated October 4, 1881, were issued to Milton W. Hazleton, is next regarded as an anticipation of claim 2. It has a series of radiating tubes, but closed at their outer ends, and arranged in successive planes one above the other, and in the patent a series of vertical tubes is described, which extends upward in the spaces between the ends of the radiating tubes, and downward from near the water line to the bottom of the boiler, and communicating therewith. The object of these circulating vertical tubes was to furnish greater heating surface, but they were a failure, and were soon abandoned. These two alleged anticipations are those which are principally relied upon by the defendant, but are not of value, unless a broad construction is given to claim 2, and it should be construed to include a system unlike the network of radiating double-branched pipes, which is the principal feature of the invention, as described in the specification.

The alleged improvement described in patent No. 463,307 consisted in dispensing with cylinder, G, of the Morrin and Scott patent, and placing the ends of peculiarly curved tubes in the shell of the outside cylinder. The specification of the patent says that in the former generators for which patents had been issued to Morrin and Scott (No. 309,727), or to himself (No. 407,940),—

"An inner cylinder is set concentrically in the upright generator cylinder, thus providing an annular water space between them, and one extremity of each of the bent generating tubes passes through the shell of the generator cylinder, and is connected to this inner cylinder. Thus, one end of each tube, or a thimble extension thereon, projects into the cylinder further than the other end. In my present construction I employ no inner cylinder and no extensions, and expand both extremities of the peculiarly curved generating tube in the shell of the generating cylinder."

The form of the loop of the tubes is that of the outline of a pear with unequal lobes, which is said to enable each tube to avoid interference with adjacent tubes, and to compel "every portion of the ascending gases to come into contact with some portion of" a gen-

erating tube. In order to give as much length as may be to the tube, an outcurve and an incurve of the "ogee" form are made in its loop.

The claims of the patent are as follows:

"(1) A steam generator having an upright generator cylinder provided with tiers of double-branched radial obliquely arranged generating tubes, both branches of which are secured in the shell of said generator cylinder, and extend therein to an equal extent, said tubes being arranged about the entire periphery of the cylinder, and overlapping one another, as set forth.

"(2) A steam generator having an upright generator cylinder provided with tiers of generating tubes, b, of loop-like form, said loop having a pear-shaped outline, when seen in plan, and each loop having at one side a lobe formed by the short outcurve at b′, and the short incurve at b″, the planes of the loops in the tubes being set obliquely to the axis of the generator cylinder, substantially as set forth."

A comparison of claim 1 with claim 2 of the Morrin and Scott patent shows that there is no patentable difference between the two claims. The specification of the entire patent shows that the difference between tiers or a horizontal series of radial double-branched tubes and a horizontal series of radial double-branched obliquely arranged tubes has no inventive character. Claim 2 of the first patent was intentionally drawn so as not to include the inside cylinder as a member of the combination, and so that, in case any one should thereafter undertake to utilize the gist of the invention by discarding that cylinder, he could be regarded as an infringer. The improvement described in claim 1 of the second patent, having been distinctly claimed in a previous patent, is not patentable, unless the last patentee was the earlier inventor. In James v. Campbell, 104 U. S. 356, 26 L. Ed. 786, Mr. Justice Bradley says:

"It is hardly necessary to remark that the plaintiff could not include in a subsequent patent any invention embraced or described in a prior one granted to himself, any more than he could an invention embraced or described in a prior patent granted to a third person. Indeed, not so well, because he might get a patent for an invention before granted to a third person in this country, if he could show that he was the first and original inventor, and if he should have an interference declared."

Machine Co. v. Hedden, 148 U. S. 490, 13 Sup. Ct. 680, 37 L. Ed. 529.

If Morrin had been the sole patentee in the Morrin and Scott patent, the discarding of the inner cylinder would have been what he had himself prefigured in claim 2 of the earlier patent, and, "if a man cannot have a patent for what another has claimed or described in a prior patent, much less can he have one for what he himself has claimed or described, for he thus shows that he has anticipated himself." Mathews v. Flower (C. C.) 25 Fed. 830. It is, however, said by the complainant that Morrin alone was the original inventor of the improvement described in claim 1 of patent No. 463,307, and that he invented it as early as 1882, and prior to the date of the Morrin and Scott invention. This earlier date was attempted to be proved by two machinists who were in the employ of the Lorillard Tobacco Works in 1882, in which Morrin was the engineer in charge, and who testified that they helped to make for Morrin the model of a single-cylinder boiler, which was produced in evidence. The model is a crude one; and, while the history of the invention would

seem to have been more within the knowledge of the inventor than of his workmen, it is noteworthy that, although Morrin was present when these witnesses testified, he was silent in regard either to the history of the invention or of the model, and did not undertake by his own oath to identify the model as the one of which the machinists testified. The testimony in regard to the date of Morrin's invention is inadequate.

The invention of the "ogee" form of loop, described in claim 2, was original with Morrin, and was patentable.

The invention described in patent No. 463,308 was a casing for the generators, in which the products of combustion pass upward among generating tubes, and its object was to provide for the ready access to and repair of any particular portion of the generator which may need inspection or repair. Sheet-metal drums, composed of segments, are mounted upon an iron base. About each segment is a marginal flange, for convenience in bolting segments and drums together. Each segment is lined with blocks or tiles or refractory material, and each tile is independently secured to the plate. A convenient number of doors are provided in the drums for access to the interior of the casing. The last of the four claims of the patent describes the invention with the most particularity, and is as follows:

"(4) An upright cylindrical casing for housing a steam boiler or generator, composed of drums or metal placed upon the other, and detachably secured together, each drum being composed of segments or sections detachably secured together, and lined on their inner faces with tiles of refractory material, secured, removably and independently, to the metal section of the casing, substantially as set forth."

The patentable character and the novelty of this casing for a vertical boiler are so fully and clearly set forth in the opinion of Judge Thomas (90 Fed. 285) that it is unnecessary to add anything upon the subject of that patent.

The inventions which are described in the claims of the three patents which were the subject of the decrees have been substantially copied by the respective defendants, with entire knowledge of the complainant's assertion of exclusive right under the patents in suit, and, as respects Lawler, under circumstances of marked aggravation.

The decrees of the circuit court in the two suits which relate to patents 309,727 and 463,308 are affirmed, with costs of this court. The decree of the circuit court in the suit which relates to patent 463,307 is directed to be modified, without costs, and the case is remanded to the circuit court, with instructions to enter a modified decree, with costs of that court, in accordance with the foregoing opinion in regard to the invalidity of claim 1 and the validity and infringement of claim 2.

WALLACE, Circuit Judge. I dissent from so much of the opinion of the court as adjudges the validity of claim 2 of patent No. 309,727, being satisfied that there was no patentable novelty in the invention therein specified. Hazleton was the inventor of everything covered by that claim (patent No. 247,910), except the peculiar form of the tubes, and tubes of that form, "radial, double branched," were old,

and were shown in the patents to Rogers and Black, Nos. 55,539 and 65,280. In the prevailing opinion the claim is sought to be validated by reading into it a limitation,—"a network of radiating tubes." This is a catch phrase, which really has no meaning, except as it may describe a somewhat larger number of tubes than are necessarily required by the claim or were shown in the earlier patents. The tubes do not interlace. Any steam generator provided with two tiers of radial double-branched tubes, and embodying the other elements of the claim, would infringe it. I do not doubt that the so-called "Climax" boiler is an exceedingly meritorious apparatus, but, so far as the improvements embodied in it are original with Morrin and Scott, they are protected by the other nine claims of the patent, and by the claims of the later patent to Morrin and Scott.